Mr. Justice Hagner
delivered tbe opinion of tbe court.
The petitioner asks that a mandamus may issue directing Mr. Bayarcl, the Secretary of State,, to pay over to him a sum of money which be alleges be is entitled to receive as assignee of certain claims adjudicated and allowed under the Joint Mexican and American Commission.
1st. Tbe principal defence made to this application by the Secretary is one which,, if allowed,, would not only be de *429 cisive of this case, but would be fatal to any claim of authority in this court hereafter to issue a mandamus against the Secretary of State in his official capacity in any matter whatever, without respect to the question whether the duty soug'ht to be enforced is merely ministerial, or one discretionary in its nature. The Secretary presents this defence iu the following language :
“And this respondent, further answering, saith, that the several sums of money mentioned in the petition, and claimed to be due and payable to the relator, are held by him subject to the order and control of the President of the United States, and are disposable by this respondent at the discretion of the President only; and that, as this respondent is advised and believes, there is no law, as hath been' mistakenly supposed by the said relator, by which this respondent is invested with authority over the said sums of money independent of the President of the United States; and it being the opinion of the President that the public interests forbid the making of payments to the said relator, in the present condition of things as hereinbefore set forth, this respondent submits that he is not subject to the process of mandamus in the premises ; and he therefore prays that he may be discharged from the said rule, with proper costs in his behalf sustained.”
But for the earnestness with which this defence has been urged by the assistant attorney-general in behalf of one of the highest officers of the Grovernment, and especially of his further contention that his position is supported by a decision of this court recently rendered in a case in which the same official was the defendant, we should have contented ourselves with a simple reference to the decision of the Supreme Court of the United States, announced eighty-four years ago in the case of Marbury vs. Madison, 1 Cranch, 163, as a sufficient refutation of the contention.
But, under the conditions to which I have adverted, it is perhaps proper and respectful that something more should be said to show that we have no alternative but to adhere *430 to the position which we-conceive has been thus so long settled.
The facts of that case, which is as familial’ to the bar as any in the whole range of jurisprudence, were these: Shortly before Mr. Adams retired from the office of President, he had signed a number of commissions for justices of the peace within this District, some of which had not been received by the persons for whom they were intended; but after Mr. Jefferson was inaugurated, they were found by Mr. Madison in the office of the Secretary of State. The President ordered the Secretary not to surrender them, and. thereupon Marbury, whose commission was withheld under this order, filed a petition for a mandamus in the Supreme Court of the United States, alleging his demand and the refusal by the Secretary under the President’s orders to perform what he averred to be a mere ministerial duty, and insisting that he had a right to have its performance enforced by mandamus from that court.
The case was elaborately argued and considered in all its relations, and the writ was refused, upon the ground that the Supreme Court possessed no original jurisdiction in the case. But the court entered upon an elaborate discussion of all the points raised, and (among others) of this very question whether, in the case of a plain ministerial duty,, the Secretary of State was amenable to the process- of mandamus ; and they decided unequivocally that he was.
I shall read a few sentences from the opinion for the reasons I have stated.
Much stress had been laid, in the argument in that case, upon the peculiar language of the section of the Act of P789, establishing the Department of State, which, as was also-urged in the argument before us, committed no authority to- the Secretary of State, except in subordination to the orders of the President.
The Chief Justice, in reply to this argument, says: “By the Constitution of the United States, the President is invested with certain important political powers, in the exercise of which he is- to-use his own discretion, and is account *431 able only to bis country in his political character, and to his own conscience. To aid him in the performance of these duties, he is authorized to appoint certain officers, who act by his authority and in conformity with his orders.
“ In such cases their acts are his acts ; and whatever opinion may be entertained of the manner in which executive discretion may be used, still there exists, and can exist, no power to control that discretion.- The subjects are political. They respect the Nation, not individual rights, and being intrusted to the Executive, the decision of the Executive is conclusive. The application of this remark will be perceived by adverting to the Act of Congress for establishing the Department of Foreign Affairs. This officer, as his duties were prescribed by that Act, is to conform precisely to the will of the President. He is the mere organ by whom that will is communicated. The acts of such an officer, as an officer, can never be examinable by the courts.
“But when the legislature proceeds to impose on that officer other duties; when he is directed peremptorily to perform certain acts; when the rights of individuals are dependent on the performance of those acts, he is so far the officer of the law — is amenable to the laws for his conduct, and cannot at his discretion sport away the vested right of others.
“ The conclusion from this reasoning is, that where the heads of departments are the political or confidential agents of the Executive, merely to execute the-will of the President, or rather to act in cases in which the Executive possesses a constitutional or legal discretion, nothing can be more perfectly clear than that their acts are only politically examinable. But where a specific duty is assigned by law, and individual rights depend upon the performance of that duty, it seems equally clear that the individual who considers himself injured has a right to resort to/the laws of his country for a remedy.”
And again: “ But, if this * * * be no intermeddling with a subject over which the Executive can be considered as having exercised any control, what is there in the ex *432 alted station of the officer which shall bar a citizen from asserting, in a court of justice, his legal rights, or shall forbid a court to listen to the. claim, or to issue a mandamus directing the performance of a duty, not depending on executive discretion, but on particular acts of Congress, and the general principles of law?”
“ If one of the heads of departments commits any illegal act, under color of his office, by which an individual sustains an injury, it cannot bo pretended that his office alone exempts him from being sued in the ordinary mode of proceedings, and being compelled to obey the judgment of the law. How, then, can his office exempt him from this particular mode of deciding on the legality of his conduct, if the case he such as would, were any other individual the party complained of, authorize the process ? It is not by the office of the person to whom the writ is" directed, hut the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined. Where the head of a department * * * is directed hy law to do a certain act affecting the absolute rights of individuals, in the performance of which he is not placed under the particular direction of the President, and the performance of which the President cannot lawfully forbid, and therefore is never presumed to have forbidden; * * * in such cases, it is not perceived on what grounds the courts of the country are further excused from the duty of giving judgment that right be done to an injured individual, than if the same services were to be performed by a person not the head of a department.”
The language of the statutes creating others of the Executive Departments, and apparently subordinating their actions to the will of the President, does not differ substantially from that used with respect to the Department of State. Such is the case with reference to the Department of War, of the Navy, and of the Treasury; but the writ has repeatedly been issued from this court, against those officials, in matters ministerial, without a word from the Supreme Court, in disapproval of a jurisdiction which, since *433 tbe case of Kendall vs. U. S., 12 Pet., 610, has been recognized as one of the flowers of our court. In the latter case, Mr. Justice Thompson, speaking for the Supreme Court, says: “There are certain political duties imposed upon many officers in the Executive Department, the discharge of which is under the direction of the President. But it would be an alarming doctrine, that Congress cannot impose upon any executive officer any duty they may think proper, which is not repugnant to any rights secured and protected by the Constitution; and in such cases the duty and responsibility grow out of, and are subject to the control of the law, and not to the direction of the President.”
In that case the granting of the writ had been resisted upon the ground of want of authority in the courts of the District, but not because of any distrust in the soundness of the general principles announced in Marbury vs. Madison; and it may not be out of place to quote the following from the report of the argument of Mr. Attorney-General Butler in that case, as evincing the understanding of a distinguished lawyer of that decision:
“And as the ordinary character of an officer’s functions would not always determine the true nature of a particular duty imposed by law, he further agreed that if an executive officer, the head of a department, or even the President himself, were required by law to perform an act merely ministerial, and necessary to the completion or enjoyment of the rights of individuals, he should be regarded quoad hoc, not as an executive, but as a merely ministerial officer, and therefore liable to be directed and compelled to the performance of the act by mandamus, if Congress saw fit to give the jurisdiction.” 12 Pet.,. 596.
Since 1803 the decision has stood undisturbed, as settled law. It is true it has been criticised, upon the ground that the court had declared itself without jurisdiction to issue the writ; and this was one of the reasons given by Mr. Jefferson in his letter of June 2, 1801, to George Hay, the prosecuting attorney in the trial of Burr, why he thought *434 “it material to stop at the threshhold, the citing of that case as authority, and to have it denied to be law.”
But in U. S. vs. Schurz, 102 U. S., 395, the Supreme Court, in awarding a mandamus against the Secretary of the Interior to deliver a land patent to the patentee, notices this suggestion in these words: “ If the relator was entitled to the possession of the patent as his property, and it was the plain duty of the Secretary to deliver it to him when demanded, then, under all the authorities, and especially the decisions of this court, he is entitled to the remedy he asks. From the case of Marbury vs. Madison, 1 Cranch, 137, down to the present time, such has been the settled doctrine of this court. And though it may be said that the opinion of Chief Justice Marshall in that case was not necessary to the decision made, which was that this court had no original jurisdiction in that case, the principles of the opinion have since been repeatedly recognized and acted upon in this court, and the case cited with approval in its definition of the circumstances under which persons holding public offices will be compelled to perform certain duties which are merely ministerial. Kendall vs. U. S., 12 Pet., 524; Decatur vs. Paulding, 14 Pet., 497.
The decision has been equally followed by the courts of the different States, even where the proceedings were against the highest State officials, to compel the performance of ministerial duties. In Magruder v. Swann, 25 Md., 173, where the writ was ordered against the Governor, the whole subject was reviewed, and the more prominent State decisions are cited.
It would, therefore, have been impossible for this court to have held a contrary doctrine; and whatever language was used in the case of U. S. ex rel. Angarica de la Rua vs. Bayard, 4 Mackey, 310, referred to by the defendant, must be understood as relating solely to the facts of that case.
It is well settled that no mandamus can be issued against a public officer, unless the party applying shows a clear legal right to the relief claimed; and also that there exists *435 a clear legal duty on the part of the official to perform the ministerial function involved.
In the case in 4 Mackey, 310, neither of these essential prerequisites of jurisdiction appeared. Under a convention between the United States and Spain, a large sum had been awarded to Angarica de la Rua for losses sustained by him at the hands of the authorities in Cuba, which was paid over by Spain to the Secretary of State. This officer paid over to the claimant the amount so received, except about $41,000, which he retained until the Spanish Government should make provision to pay the expenses of the arbitration. Several years afterwards the Secretary paid over the sum so retained in full, hut refused to pay to the claimant an amount of interest which had been realized from the investment of the sum, made by the Secretary’s order while awaiting the action of the Spanish Government. To compel the payment of this interest the mandamus was applied for; but it was refused by this court, as it appeared that the retention of the $41,000 by the Secretary, and its investment, and the earning of interest on the fund, were all equally without law, but were mere voluntary acts of the Secretary; that the unchangeable practice of the Government is not to pay interest upon claims, and that there could be no element of contract in the transaction; and hence, however equitable might be the petitioner’s claim to the interest, it could not be enforced at law.
2. The next inquiry is, whether the relator has shown a clear legal right to the fund he claims.
He avers under oath the allowance by the mixed commission of the claims of Conroy and others; that afterwards, and before the payment of any of the awards, he became and still is the assignee of one-half of each; and he proceeds :
“That the fact of this relator being such assignee was judicially determined by this court in General Term in 1881, in the suits of Thomas P. McManus against Richard H. Porter and others, in equity, afterwards in the case of *436 Eicbard H. Porter and others, in equity, decided in 1884 in the General Term of this court.
“ That the Department of State has recognized this relator as such assignee, upon full argument and hearing before the Secretary of State, and has paid to this relator nine instalments hitherto paid by Mexico and distributed by the Secretary of State.
> “ That on January 31, 1886, a tenth instalment was paid by Mexico to the defendant, as Secretary of State of the United States, and that the defendant has made a ratable distribution of said instalment, having paid other claimants, and especially having paid said Parsons and Oonroy and Standish the moiety which they had not assigned to this relator.
“That by the first section of chapter 262 of the acts of the Forty-fifth Congress, approved June 18, 1878, it is made the duty of the Secretary of State to ratably apportion and to pay to the claimants or their assigns each instalment of money when received from Mexico.
“That of the said tenth instalment there is due this relator on account of the Conroy award, $1,806.06 ; on account of the Standish award, $1,519.55 ; and on account of the Parsons award, $1,817.92; which sums are specifically on hand, and the amounts have been computed and set apart by the proper auditing officers of the State Department.
“ That notwithstanding the judicial decision of this court, and of the Department of State, made by two predecessors of the said Bayard in the said office of Secretary of State, the said defendant arbitrarily refuses to perform the duty imposed upon him by law, and to pay to this relator the said sums of money due and apportioned to him.”
This constitutes, unquestionably, a statement of a clear legal right. If he is the assignee, and the money is in the custody of the Department, and by the statute the Secretary is directed to pay it over, after it has been set apart for the assignee, then undoubtedly the petitioner has the right to demand its payment.
The case is heard here upon the agreement of the litigants *437 that the answer of the Secretary is, in all respects, to be considered as though it were a return to an alternative mandamus already issued; and the court has considered the case throughout according to the terms of this stipulation.
The reply to the allegations of the petition is thus stated in the return:
“This respondent, answering, saith, that true it is that awards were made by the commission established by the treaty between the United States and Mexico on the 4th day of July, 1868, for the amounts and in favor of the parties named in the said petition; and this respondent is advised that the said relator, Stephen Y. White, doth claim an interest in the one-half of each of said awards ; and this respondent doth admit that the rights and interests claimed by the said White, as aforesaid, were recognized by one, although not recognized by another, of the predecessors of this respondent, and payments made to him accordingly. But this respondent saith that he finds it impossible, as the matter now stands, to recognize claims and pretensions of the said White to the moieties of the said awards, without ignoring the conflicting claims and pretensions oí a certain Bichard H. Porter, between whom and the said White litigation in respect to the said award is now, and for a long time has been pending.
“And this respondent further saith that he hath always been, and is now, willing to pay whatever sum or sums may be due on the said moieties out of moneys received under the said treaty from the Bepublic of Mexico, on an order and acquittance signed by all the rival claimants of the said moieties; which your respondent respectfully submits is as much as could be done by him without embroiling the United States in a litigation in which it has no interest whatever.”
Is this such a return to the supposal of the petition as would disentitle the plaintiff to the writ?
The well settled rules of the common law on the subject of mandamus have not been modified by statute in this jurisdiction.
*438 In Harwood vs. Marshall, 10 Md., 463, the court states with much fullness the principles by which the sufficiency of a return should be tested, and that case affords so clear an illustration of the manner in which we should examine that before us, that we shall quote from it at length. The facts of that case were these :
The Maryland legislature had elected Marshall state librarian, and the incumbent, Harwood, refused to give up the office. Marshall applied for a mandamus to compel its surrender; and the court below ordered a peremjffory writ. In the Court of Appeals it was insisted that the court below erred in ordering the mandamus, because the return sufficiently denied the statement of fact upon which the petitioner relied as the ground of his right. The appellate court says:
“In this látate, the proceedings in mandamus in such a case as the one before us are governed entirely by the rules and principles of the common law. The office in question is a public office, and not within the provisions of the statute of 9 Anne, chap. 20, nor of the Act of Assembly of 1828, chap. 78.
“If the return state upon its face, with precision and certainty, facts which are sufficient in law to justify the court in refusing the writ, the facts alleged are not traversable ; and whether they be true or false, the return is conclusive, and the writ is denied. The only remedy, if the facts alleged in the return be untrue, is by action on the case for a false return. 1 Harr. & J., 557.
“Such is the ancient and well settled principle of the common law governing this case, and remaining to this day unaltered by any statutory enactment in Maryland.
“In the excellent treatise of Tapping on Mandamus, p. 358, it is said: ‘The averments of the return must be certain. The certainty required by the common law is, by some of the cases, stated to have been certainty to every intent, and therefore greater certainty than is requisite to a plea. Other cases have decided that the certainty or strictness which prevailed at common law was the same as that *439 which governed estoppels, indictments or returns to writs of habeas corpus, and as to them it is laid down that nothing is to be taken or construed by intendment or inference, so that all material facts should be positively and distinctly alleged.’ * * *
“If the return deny the supposal of the writ, the traverse must be single, direct and certain. The rule being that every distinct and material allegation contained in the writ must, if it be intended to contradict them, be traversed.
“ The question in considering the sufficiency of a return by way of traverse must be whether, if the supposal of the writ be true and sufficiently averred, an action for a false return can be certainly maintained against the defendant; or, in other words, if the facts averred in their return, strictly construed as stated, may be true consistently with the truth of the suggestion of the writ, then the return is vicious.
“ Let us apply these rules to the case before us: The facts stated in the writ are, that the petitioner £ hath taken and subscribed the oaths of office, as prescribed by the Constitution and laws for the State librarian.’
“ The traverse in the return is as follows : £ This respondent knows nothing of the qualification of the said Marshall, .to the said office of State librarian, saving and excepting from the pretences of the said Marshall, as set forth by him in these proceedings, and saving and, excepting also, that, from an inspection of the books in the office of the Governor of the State, it appears, and this respondent so avers the fact to be, that the said Marshall did not take and subscribe the oaths of office, required by the Constitution and laws to be taken and subscribed by him before the Governor of the State, in manner and form as directed by the Constitution and laws.’
“ This is not a good traverse. First, it is evasive, in not denying in direct terms, on the solemn oath of the respondent, the fact alleged in the writ; expressly disclaiming all knowledge of the fact, except from what is alleged, and from what appears from an inspection of the books in the *440 office of the Governor, the averment amounts to no more than an allegation of a fact derived from the inspection of the books ; or if this be not the true construction, the averment is at least ambiguous in its terms, the words ‘ and this respondent so avers the fact to be,’ are susceptible of being construed to refer either to the qualification itself, or to what appears from the boohs of the Governor; and in this view it is bad as wanting the requisite certainty. If the defendant were sued for a false return, the latter construction might be insisted on with great force in defence of the action.”
And as the court held that those denials were not sufficient to break the force of the averments in the petition, which were, therefore, to be taken as established, they ordered the peremptory writ to issue.
Tested by this reasoning, it is perfectly plain that the answer in the present case is entirely insufficient. It would be faulty even as an answer in chancery, or in any ordinary legal proceeding, since it does not meet distinctly several of the material averments of the petion. It does not deny that the relator is the assignee, although it admits that he claims an interest in onc-half of the fund. The nearest approach to a denial of White’s right as assignee is the statement that the respondent finds it impossible to recognize White’s claims without ignoring the conflicting pretentions of Porter, between whom and the said White it it avers that .litigation in respect to the award is, and for a long time has been pending.
Litigation in what way? It is not averred that Porter claims as assignee; for all that appears in the return he may claim only as a creditor of White or of the original assignors. It does not deny that White’s claims as assignee, have been adjudicated by this court, in cases decided upon hearings in which some of the justices who unite, in this judgment participated. Nor does it allege in any way that there has been an appeal from those adjudications, or that a supersed as has been obtained to tie the hands of White and prevent him from claiming his money at once. The *441 reference to Porter’s “claims and pretensions” cannot be considered as equivalent to a de'nial that White is the assignee, or that anyone else claims to be such assignee.
The answer does not deny that the particular sums have been set apart in the department to be paid upon the moieties assigned to White ; or that the department had already paid him the dividends from the nine previous instalments received from Mexico by the Secretary of State. At the best, each of the denials or averments is vague and uncertain. If an action were brought against the Secretary as for a false return in respect to these several statements in the answer, how could it be successfully contended that the answer denied the material supposals of the petition with such certainty as to sustain the action, when it is qujte clear that it has not denied either of them with the directness, singleness and certainty required by the law of mandamus ?
We are clearly of the opinion that as the answer does not deny with proper certainty the material averments of the petition, they must, therefore, stand as established, and as presenting a clear legal right to the money claimed.
The next inquiry is whether the function to be exercised by the Secretary is a ministerial duty. That would seem to be plain enough. The first section of the statute of June 18, 1878, authorizes and requires the Secretary of State to receive and distribute in ratable proportions, to the claimants or their legal representatives or assigns, each of the instalments which shall have been paid by the Mexican Republic.
This section of the statute was before this court in the case of U. S. ex rel. Key vs. Frelinghuysen, 2 Mackey, 301.
That was an application for a mandamus against Secretary Frelinghuysen, to require him to pay over a part of an award which had been made in what was known as “ The Weil Claim,” arising under this commission, but which the fifth section of the act authorizes the President to withhold if he should see fit under certain circumstances. This court *442 first speaks of the claims in general, which were not excepted in section 5, and sa^s:
“If the act had stopped here, there would have been a plain ministerial duty created by it, for the benefit of the parties in whose favor the awards were made, admitting of no exercise of discretion, and proper to be enforced by mandamus if its performance was refused.”
The act did stop there, so far as the present case is concerned, for this is not one of the cases excepted by section 5. But the particular case under consideration in 2 Mackey was one of two claims named in that section, which Congress thereby requested the President to investigate, and authorized him, in case he should be of the opinion that the charges of fraud presented as to those claims were well founded, or that other considerations therein referred to rendered it proper, in his opinion, that the case should be retried, to withhold payment of the awards.
The obvious design of this exception in the fifth section was to vary the general rule which applied to all claims not therein named; and as to those two claims, to confer upon the President a discretion which he was not to possess with reference to the claims not so excepted ; otherwise, the provision in the fifth section would not have been necessary.
Although the Supreme Court, held that the discretionary power created by section 5 still continued, it said nothing incousistent with the declaration of this court as to the nature of the duty devolved upon the Secretary of State, with respect to the claims in general., It, therefore, remains as a valid decision of this court that (except as to the Weil and La Abra claims) the payment of the money by the Secretary of State, to the claimants and their assigns, under these awards was purely a misterial duty, and such as this court could enforce by mandamus.
Only one point remains. Has this claimant any other reasonable or attainable remedy? Plainly not. This is his only mode of obtaining his money, and if relief is denied here he would be indeed remediless in the premises, and that deplorable result would ensue which Chief Justice *443 Maisball, in Marbury vs. Madison, declared would expose to obloquy our system of jurisprudence — that a suitor with a plain right to redress should be powerless to obtain it from the courts, because his rights are withheld by a powerful officer of a government created for his protection.
We think it is our plain duty to direct that a peremptory mandamus shall issue as prayed; and it is so ordered.